UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ARIEL HERNANDEZ        )
                        )
    Petitioner,       )
                        )        CIVIL ACTION NO.
v.                   )        NO.16-10953-DPW
                        )
COMMONWEALTH OF      )
MASSACHUSETTS,        )
                        )
    Respondent.       )

<u>MEMORANDUM AND ORDER</u>
January 19, 2017

Ariel Hernandez seeks to vacate his Massachusetts state court convictions on armed robbery, first degree murder, armed home invasion, and weapons charges. Hernandez contends the Massachusetts state courts wrongfully denied: (1) his motion to suppress firearm evidence, (2) his motion to sever his trial from that of two co-defendants, and (3) his motion to sever the several charges against him.

## I. BACKGROUND

### A. *Factual Background*

In federal habeas proceedings challenging state convictions, determinations of factual issues made by the state courts are presumed correct, and the petitioner has the burden

1

of rebutting that presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Hernandez has undertaken no such showing here, consequently I presume the state court findings of fact are correct, and will accept the SJC's findings in making my legal rulings in this matter. *See Pina* v. *Maloney*, 565 F.3d 48, 50 (1st Cir. 2009)(relying on facts as recounted by SJC supplemented with other facts in the record consistent with SJC's decision).

On October 22, 2009 Hernandez, along with Giovanni Hill, Darien Doby and Tim Brown drove slowly by the armed robbery victims, Sophia Deno and Ashley Cardoso, twice and then parked around the corner from them. *Com. v. Hernandez*, 42 N.E.3d 1064, 1072 (Mass. 2015). The vehicle was a green Honda Civic with a Dominican flag hanging from the rear view mirror and was owned by Hernandez's sister. Hernandez and Hill got out of the vehicle and removed a firearm from the trunk, after which Hernandez approached Deno and Cardoso, robbing them both at gunpoint. Hill stood five to ten feet away laughing.

After the robbery, Hernandez and Hill got back in the vehicle with Hernandez driving and Hill in the passenger seat. The men drove to Simon Phanthai's house, where Hernandez changed into a black sweatshirt. Next, the group, including Hernandez, Hill, Doby, Brown, and Phanthai met at Brown's house. There,

2

Hernandez went through the stolen purses and retrieved $80 in cash and one of the victim's debit cards.  Hernandez told Hill to take the debit card to an automated teller machine to withdraw money; Hill was ultimately unsuccessful after trying to withdraw money at two banks.

At around 11:45 P.M., Hernandez's two co-defendants at trial, Jamal and Karon McDougal, arrived at Brown's house. Either Jamal or Karon asked Hernandez if he wanted to be involved in a robbery.  Hernandez agreed to join them and bring his gun.  Silva drove his 1995 Toyota Camry to Brown's house and agreed to be the driver for the robbery.  Hernandez, Jamal, and Karon changed into different clothes provided by Brown, and then left Brown's house together with Silva.  Jamal instructed Silva where to drive; when they arrived, Silva remained in the vehicle while the other three walked toward the residence through a garage.

The two murder victims, Luis Antonio Martinez Delgado ("Tony") and Hector Delgado — who sold marijuana from their house — were present at the residence.  Brian Staples was also present at the time of the murder; as was the Delgados' nephew, Kyle Delgado.  At around 1:00 A.M. there was a loud bang on their door and Tony answered.  Staples came down and saw two males, both with guns drawn, one with a goatee and a hood

3

covering his face.  Staples ran upstairs to his bedroom to call 911.  Kyle Delgado and Staples both heard gunshots while hiding. When they emerged, they found Hector lying on his back in his bedroom with a bullet hole in his stomach, and Tony was on the stairs with a bullet hole in his back.  Both died of their wounds.

Karon returned to the Camry three to four minutes after initially exiting the vehicle; Jamal and Hernandez returned five minutes after Karon.  Jamal told Hernandez that he was a great shot, and Hernandez responded, "I know, once I seen them jump on you, I started shooting."  Back at Brown's house, Hernandez and Jamal conversed further about the events.  Hernandez, Hill, and Doby left Brown's apartment together in the Honda belonging to Hernandez's sister.  Hill placed the gun in the trunk of the vehicle.  Hernandez dropped Doby off and was headed to Hill's house when Hernandez and Hill were stopped by police and arrested.

## B.    Procedural Posture

In December of 2009, Hernandez was charged with armed robbery (two counts), murder in the first degree on the theory of felony-murder (two counts), home invasion, unlawful possession of ammunition, and possessing a firearm without a license.  Hernandez filed a motion to suppress the firearm

4

evidence, which consisted of a gun found in the trunk of the car that he was driving.  Hernandez argued that the police lacked probable cause for the warrantless search and that the search exceeded the proper bounds of permissible inquiry.  After an evidentiary hearing, in which one witness (Officer Christian Hanson of the Lowell Police Department) testified, the motion to suppress was denied by the Massachusetts Superior Court.

Additionally, Hernandez filed a motion to sever his trial on the charges of armed robbery of Deno and Cardoso from the charges regarding the murders of Hector and Tony Delgado and armed home invasion; Hernandez also requested to sever his trial from that of Tim Brown.  In a second severance motion, Hernandez asked to sever his trial regarding the murders from that of co-defendants Jamal and Karon.  With respect to the first motion, the court granted severance of the trials of Hernandez and Brown, but the request to sever the trial of the charges was denied.  Hernandez's second severance motion regarding the joint trial with Jamal and Karon was also denied.

Hernandez was tried in the Middlesex Superior Court and was found guilty of all charges.  His co-defendants were acquitted of all charges.  On appeal to the SJC, Hernandez argued (1) the trial court erred in denying his motion to suppress the firearm evidence (2) the trial court erred in denying severance of his

5

trial from that of his co-defendants and (3) the trial court erred in denying severance of the various charges against him. *Hernandez*, 42 N.E.3d at 1067.  The SJC upheld the trial court's determinations.  *See Hernandez*, 42 N.E.3d at 1078.

Hernandez thereupon filed a petition for writ of habeas corpus in this court, seeking review of the issues upon which he had unsuccessfully pursued before the SJC.

## II. ANALYSIS

### A.  *Wrong Respondent*

Hernandez named the Commonwealth of Massachusetts as the Respondent in this proceeding rather than Joseph Murphy, the Superintendent of Old Colony Prison, where Hernandez is being held. Congress has required that a writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained."  28 U.S.C. § 2243.  A prisoner's proper custodian for purposes of habeas review is the warden of the facility where he is being held. *Vasquez* v. *Reno*, 233 F.3d 688, 691 (1st Cir. 2000).

Jurisdiction over the custodian is necessary because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 690 (quoting *Braden* v. *30th Judicial Circuit Court*, 410 U.S. 484, 495 (1973)).  The First

6

Circuit, in *Vasquez*, held that the district court should avoid
addressing the merits when the petitioner does not direct his
habeas petition to the person having custody of the person
detained. *Id.* at 697; *see also Gonzalez* v. *Grondolsky*, 152 F.
Supp. 3d 39, 44 (D. Mass. 2016) (action moot when the named
respondent on a writ of habeas corpus was the warden of the
prison where the petitioner was held prior to being transferred
to another facility).  Such avoidance, however, seems
improvident here.  The warden of the Massachusetts prison
facility holding Hernandez, unlike the proper respondent in
*Vasquez*, is within the jurisdiction of this court, the nominal
respondent would be represented by the Massachusetts Attorney
General's Office which argues the merits in the instant motion
to dismiss, and the petition may easily be amended to remedy the
error in identifying the nominal respondent.  Moreover, as will
appear, addressing the merits now will be dispositive favorably
to the respondent and will avoid further and unnecessary
consumption of judicial resources.  I turn therefore to the
merits.

**B.   *Fourth Amendment Claim***

Where the state has provided an opportunity for full and
fair litigation of a Fourth Amendment claim, a state prisoner
generally may not be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial. *Stone* v. *Powell*, 428 U.S. 465, 494 (1976). The First Circuit has interpreted *Stone* as standing "for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims." *Sanna* v. *Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). The First Circuit, however, has also emphasized that "this proposition is not absolute: there is an exception for instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." *Id.*

Even if I were to disagree with the outcome reached by the state court on the Fourth Amendment claim here, I have no authority to grant the writ without making the threshold inquiry to determine whether the state prisoner was given the opportunity for full and fair litigation of his Fourth Amendment Claim. *Pignone* v. *Sands*, 589 F.2d 76, 80 (1st Cir. 1978) (rationale of *Stone* would be wholly rejected if federal courts could grant writ in response to disagreement with the state court's reasoning). Full and fair litigation means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment claims. *Sanna*, 265 F.3d at 8 (citing *Pignone*, 589 F.2d at 79). I find

8

that Hernandez had such process available and cannot surmount the threshold for pressing a Fourth Amendment claim in a federal habeas corpus proceeding.

Hernandez filed a motion to suppress the firearm evidence, and was granted an evidentiary hearing.  The Massachusetts Superior Court denied this motion through a written order.  The claim was subsequently appealed to the SJC, which issued an opinion upholding the Superior Court's denial of the Motion to Suppress.  *See Hernandez*, 42 N.E.3d at 1078.  These procedures demonstrate "full and fair litigation" of the claims.  *See Sanna*, 265 F.3d at 8 (holding that an evidentiary hearing, written opinion by the superior court judge, and a direct appeal to the SJC was sufficient to find full and fair litigation of Fourth Amendment claim).  Consequently, I do not reach the substance of the Fourth Amendment claim because it has been fully and fairly litigated in the state courts.

## C.   *General Habeas Standard of Review*

A petitioner seeking relief under the Antiterrorism and Effective Death Penalty Act of 1996, faces a demanding burden.  *Cooper* v. *Bergeron*, 778 F.3d 294, 299 (1st Cir. 2015).  An application for a writ of habeas corpus may not be granted as to any claim that has previously been adjudicated on the merits by a state court, unless the petitioner shows that the decision was

contrary to clearly established federal law, as determined by
the Supreme Court of the United States, or involved an
unreasonable application of such definitive federal law, or was
based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceedings.  *See* 28
U.S.C. § 2254(d).  This means the petitioner must demonstrate
that "Supreme Court precedent requires an outcome contrary to
that reached by the relevant state court."  *Aspen* v.
*Bissonnette*, 480 F.3d 571, 576 (1st Cir. 2007).  The phrase
"clearly established" refers only to the holdings, not the
dicta, of the Supreme Court's decisions as of the time of the
relevant state-court decision.  *Thaler* v. *Haynes*, 559 U.S. 43,
47 (2010) ("A legal principle is 'clearly established' within
the meaning of this provision only when it is embodied in a
holding of this Court").

     A state court decision is "contrary to" clearly established
federal law as determined by the Supreme Court if it
"contradicts the governing law set forth in the Supreme Court's
cases or confronts a set of facts that are materially
indistinguishable from a decision of the Supreme Court and
nevertheless arrives at a result different from its precedent."
*Brown* v. *Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (quoting *John* v.
*Russo*, 561 F.3d 88, 96 (1st Cir. 2009)).  The phrase "'contrary

to' suggests that the state court's decision must be substantially different from the relevant precedent of the Supreme Court." *Id.* (quoting *Williams* v. *Taylor*, 529 U.S. 362, 405 (2000)).

A state court adjudication involves an unreasonable application of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Brown* v. *Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (alteration in original)(quoting *Williams* v. *Taylor*, 529 U.S. 362, 413 (2000)).  Although the term "unreasonable" may be difficult to define with precision, it is a common standard in legal analysis; fundamentally, its use in this context serves to emphasize that an "unreasonable application of federal law is different from an incorrect application of federal law." *Williams* v. *Taylor*, 529 U.S. 362, 410 (2000) (O'Connor, J., concurring).  Since Congress "specifically used the word 'unreasonable,' and not a term like 'erroneous' or 'incorrect,'. . . a federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," rather, "that application must also be unreasonable." *Id.* at 411.

11

1. <u>Severance of Parties</u>

The SJC relied primarily on Massachusetts law in concluding that joinder of parties was not prejudicial to Hernandez. Under Massachusetts law, it is presumed that individuals will be tried together when criminal charges arise out of the same criminal conduct. *Com.* v. *Siny Van Tran*, 953 N.E. 2d 139, 149 (Mass. 2011); Mass. R. Crim. P. 9(b). If it appears that a joinder of offenses or of defendants is not in the best interests of justice, the judge may upon his own motion or the motion of either party order an election of separate trials of counts, grant a severance of defendants, or provide whatever other relief justice may require. Mass. R. Crim. P. 9(c). In the courts of the Commonwealth, severance is usually a matter within the sound discretion of the trial judge. *Com.* v. *Stewart*, 875 N.E.2d 846, 853 (Mass. 2007). "A judge should sever trials if a defendant meets the burden of proving that (1) the defenses are antagonistic to the point of being mutually exclusive, or (2) the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial." *Siny Van Tran*, 953 N.E.2d at 149–50 (citations omitted)(internal quotations omitted). Defenses are mutually antagonistic and irreconcilable when the "sole defense of each is the guilt of

the other." *Id.* at 150 (quoting *Com.* v. *Moran*, 442 N.E.2d 399, 406 (Mass. 1982)); *see also Stewart*, 875 N.E.2d at 853.

On the issue of joinder of parties, Massachusetts law is substantially the same as applicable federal law. Under the Federal Rules of Criminal Procedure, "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b); *Zafiro* v. *United States*, 506 U.S. 534, 537 (1993). There is a preference under federal law for joint trials of defendants who are indicted together because joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro,* 506 U.S. at 537. However, the Federal Rules of Criminal Procedure recognize that if it appears a defendant will be prejudiced by joinder with co-defendants "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); *Zafiro,* 506 U.S. at 538.

Additionally, under federal law, as under Massachusetts law, "mutually antagonistic" or "irreconcilable" defenses may, in some circumstances, be so prejudicial as to mandate severance, but courts have reversed relatively few convictions

on such grounds.  *Zafiro*, 506 U.S. at 538.  In *Zafiro*, the Supreme Court held that mutually antagonistic defenses are not prejudicial per se, and Rule 14 does not require severance even if prejudice is shown, but leaves relief to the District Court's discretion.  506 U.S. at 538-39.  The Supreme Court has directed that District Courts only grant severance under Rule 14 if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The question at this juncture is whether the Supreme Court's holding in *Zafiro* constitutes "clearly established" federal law binding on the states.  This has not been addressed by the First Circuit, but the Ninth Circuit has held that *Zafiro* does not apply to states, and therefore does not constitute "clearly established" federal law.  *See Collins* v. *Runnels*, 603 F.3d 1127, 1132-33 (9th Cir. 2010).  While I might be inclined to hold that *Zafiro* constitutes "clearly established" — if somewhat open textured — federal constitutional law as embodied in the Federal Rules of Criminal Procedure, I need not resolve that issue because the SJC here adhered to state law that is substantially similar to *Zafiro*.

14

The trial court judge granted the motion by Hernandez to sever his trial from Brown's.  With respect to Jamal and Karon, Hernandez's primary argument was that his defense was inconsistent with the defense of Jamal and Karon.  Jamal and Karon are African American and they highlighted, he argues, testimony that the perpetrators of the home invasion were Hispanic.

Mutual antagonism exists where the acceptance of one party's defense will preclude the acquittal of the other.  *Com.* v. *Moran*, 442 N.E.2d 399, 406 (Mass. 1982).  Or, in other words, where the sole defense of each is the guilt of the other.  *See Com.* v. *Stewart*, 875 N.E.2d 846, 853 (Mass. 2007).  Here, however, the acceptance of Jamal and Karon's defenses did not preclude Hernandez from being acquitted simply because he is Hispanic.  In upholding the trial court's decision, the SJC agreed with the contention that there are many other Hispanic individuals, aside from Hernandez, who could have committed this crime.  *Hernandez,* 42 N.E.3d at 1075.

Furthermore, Hernandez and his co-defendants did not use, as their sole defense, the guilt of each other.  Rather, they identified third parties as the actual perpetrators of the crime.  In closing argument, defense counsel for all three defendants argued that other persons who were present at Brown's

15

apartment on the evening leading to the armed home invasion and double murder were responsible. *Hernandez*, 42 N.E.3d at 1074. In particular, counsel for Hernandez argued that Silva and Brown were the perpetrators, not Hernandez and the McDougal co-defendants. *Id.* Karon's counsel argued that Silva, Brown, and Hill were the culpable parties. Jamal's counsel argued that Brown, Silva, Doby, and Hill were responsible. *Id.*

The SJC concluded that there was no abuse of discretion in the denial of the motions to sever because "the defenses at trial were not mutually exclusive and joinder of defenses at trial did not prevent the defendant from obtaining a fair trial." *Hernandez*, 42 N.E.3d at 1075. The SJC observed that "although the codefendants differed in the descriptive characteristics they wanted the jury to remember about the intruders, [Hernandez] did not need the jury to believe that Jamal or Karon were guilty in order to obtain an acquittal." *Id.*

It remains an open question in the First Circuit whether *Zafiro* expresses, through its treatment of Fed. R. Crim. P. 14, "clearly established" federal law binding on states. Even assuming that *Zafiro* is in that sense clearly established federal law, the SJC did not contravene it here. While the SJC did not explicitly rely on federal law in its ruling, the SJC's

16

decision affirming the determination not to grant severance is neither contrary to, nor an unreasonable application of federal law under *Zafiro*.   The SJC adhered to state court standards which are nearly identical to *Zafiro*.

    2.   Severance of Claims

    As with the severance of parties, it is unclear whether there is clearly established federal law with respect to severance of claims.   The Supreme Court has stated that a misjoinder of offenses may be a constitutional violation if it prevents a defendant from obtaining a fair trial.   *See United States* v. *Lane*, 474 U.S. 438, 446 n. 8 (1986) ("Improper joinder does not, in itself, violate the Constitution.   Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."); *Cormier* v. *Saba*, 953 F. Supp. 2d 274, 286–87 (D. Mass. 2013)(applying the *Lane* standard to denial of motion to sever claims); *Herring* v. *Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (joinder of offenses rises to the level of a constitutional violation only if it "actually renders petitioner's state trial fundamentally unfair and hence, violative of due process").   However, footnote 8 in *Lane* may be characterized as dicta rather than a formal holding and consequently is not necessarily "clearly established"

federal law.  *See Thaler v. Haynes,* 559 U.S. 43, 47 (2010) (per curiam) (explaining that dicta is not "clearly established" federal law).  My colleague Judge Saylor dealt with this issue in adopting a Report and Recommendation by Magistrate Judge Dein which held that "clearly established federal law simply states that misjoinder may be a constitutional violation if it prevents a defendant from obtaining a fair trial."  *Cormier*, 953 F. Supp. 2d at 287.  Alternatively, the Ninth Circuit has held that *Lane* does not identify "clearly established" federal law.  *See Collins*, 603 F.3d at 1131.  Although I share the view expressed by Judge Saylor, given the divergence in approach by the courts on this issue, I will for present purposes assume that *Lane* is "clearly established" federal law and examine whether the SJC's decision to uphold the trial court's joinder of claims rendered the trial of Hernandez fundamentally unfair.

As to this issue, the SJC also cited primarily Massachusetts law; at the same time it relied heavily on *Commonwealth v. Pillai*, 833 N.E.2d 1160 (Mass. 2005) which stands for the basic proposition set out by the Supreme Court in *Lane*, 474 U.S. at 446 n. 8.  *Pillai*, 833 N.E.2d at 1166 (the defendant "bears the burden of demonstrating that . . . prejudice from joinder was so compelling that it prevented him for obtaining a fair trial.").  Consequently, even though it may

18

be said to be an open question in the First Circuit whether *Lane*

is "clearly established" federal law, the SJC adhered to a

standard essentially identical to that set out in *Lane*.  The SJC

reached the merits of Hernandez's claim; therefore, I review the

SJC's determination under a deferential standard.  *See Cormier*,

953 F. Supp. 2d at 287.

Under the Massachusetts Rules of Criminal Procedure,

joinder of offenses in trial is permissible "if a defendant is

charged with two or more related offenses . . . unless [the

trial judge] determines that joinder is not in the best interest

of justice." Mass. R. Crim. P. 9(a).  Related offenses are

"based on the same criminal conduct or episode or arise out of a

course of criminal conduct or series of criminal episodes

connected together or constituting parts of a single scheme or

plan."  *Id.*  The federal rule regarding misjoinder strives to

ensure that the jury does not convict an accused of a charged

crime simply because the accused has been charged with, or

convicted of, a different, unrelated crime.  *United States* v.

*Bruck*, 152 F.3d 40, 44 (1st Cir. 1998).

In determining whether counts are properly joined, the SJC

considered such factors as factual similarities, closeness of

time and space, and whether evidence of the other offenses would

be admissible in separate trials on each offense.  *Compare*

19

*Pillai*, 833 N.E.2d at 1166 with *United States* v. *Edgar*, 82 F.3d
499, 503 (1st Cir. 1996)(the court considers factors such as:
whether the charges are laid under the same statute, whether
they involve similar victims, locations, or modes of operation,
and the time frame in which the charged conduct occurred).  As
the SJC observed, the two robberies transpired within a few
hours of one another, occurred within 50 yards of one another,
and a firearm was used in both.  *Hernandez*, 42 N.E.3d at 1077.
For these reasons, it was not unreasonable to conclude the
crimes had a common scheme or pattern.  *See Pillai*, 833 N.E.2d
at 1166 ("Offenses are related if 'the evidence in its totality
shows a common scheme or pattern of operation that tends to
prove' each of the complaints.").  The defendant "bears the
burden of demonstrating that the offenses were unrelated, and
that prejudice from joinder was so compelling that it prevented
him from obtaining a fair trial." *Pillai*, 833 N.E.2d at 1166.
The SJC supportably determined that Hernandez failed to meet
this burden.

     The SJC also considered whether evidence of each offense
would be admissible in separate trials.  While acknowledging
that evidence of other bad or criminal acts is not admissible to
show "bad character or propensity to commit the crime charged,"
the SJC observed that the bad acts at issue here could be

admissible to show "intent, motive, state of mind, or some other relevant issue at trial." *Hernandez*, 42 N.E.3d at 1077 (quoting *Commonwealth* v. *Dung Van Tran*, 972 N.E.2d 1 (2012)).  The SJC concluded that the evidence was admissible because "the prosecution is entitled to present as full a picture as possible of the events surrounding the incident itself, as long as the probative value of the evidence presented is not substantially outweighed by any prejudice to the defendant." *Hernandez*, 42 N.E.3d at 1077 (internal quotation marks omitted).  The SJC determined that neither the joinder of co-defendants, nor of claims, prevented Hernandez from having a fair trial.

The SJC considered Hernandez's joinder claims fully and applied standards which conform with and did not unreasonably apply the standards employed under federal law, irrespective of whether those standards constitute "clearly established" federal law applicable to the states.  Federal habeas relief is not available on grounds of improper joinder.

### III. CONCLUSION

For the foregoing reasons, I GRANT the Respondent's Motion for Judgment on the Pleadings with respect to Petitioner's habeas corpus petition, which I construe to be directed against the Massachusetts prison warden in whose custody he is serving his

sentence.   The Clerk is directed to enter a judgment of

dismissal of this petition.


/s/ Douglas P. Woodlock_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE